## HOPWOOD v. CORBIN.

1. **Agency:** AUTHORITY TO BIND PRINCIPAL BY LETTERS: EVIDENCE ESTABLISHING. The evidence in this case considered and *held* sufficient to establish the authority of one of defendant's agents to bind defendant by certain letters written by the agent, authorizing the sale of lands to plaintiff.

2. ————: CONSTRUCTION OF LETTERS GRANTING AUTHORITY: RULE OF CONSTRUCTION. When the language of a writing is ambiguous, it must be taken most strongly against the writer, especially when a construction of which it is fairly susceptible has been placed upon it, and third parties have been induced to act upon such construction. Measured by this rule, it is *held* that certain letters, authorized by defendant to be written to certain agents in regard to the sale of lands, were susceptible of a construction which gave the agents authority to make sale of the lands, and that defendant was bound to consummate a sale so made to the plaintiff.

3. **Specific Performance:** CONVEYANCE OF LANDS: RULE AS TO TENDER. One who seeks a decree for specific performance in the conveyance of lands is not required to tender the consideration, or to bring it into court for the defendant's use, where the defendant has continually denied the obligation of the contract and declared his purpose not to perform the same. In such a case, it is sufficient for plaintiff to show that he has at all times been ready to perform on his part.

*Appeal from O'Brien Circuit Court.*

THURSDAY, APRIL 10.

THIS is an action in equity to enforce specific performance of an alleged contract by defendant to sell to plaintiff a section of land. The circuit court denied the relief demanded, and dismissed plaintiff's petition. Plaintiff appeals.

*Traer & Voris*, for appellant.

*Warren Walker*, for appellee.

REED, J.—I. The contract which plaintiff seeks to enforce in this action is in parol, and was entered into by him and

**1. AGENCY: authority to bind principal by letters: evidence establishing.** Broadstreet & Day, a firm of land agents doing business at Sanborn, in this state, who assumed, in making the contract, to act as agents for the defendant. The only authority which they claimed to have is contained in two letters which they had received shortly before making the contract, in answer to letters which they had written to defendant. The letter first received by them is as follows:

"THE CORBIN BANKING CO.,
"113 and 115, BROADWAY, N. Y. CITY, Oct. 7, 1880.

"Broadstreet & Day, Sanborn, Iowa. Gents:—Answering yours of the 2d inst., I say, herewith enclosed list of O'Brien county land with prices. If you can effect any sales I shall be glad of it, but I shall not put them into your hands to sell absolutely. I reserve the right to sell through anybody making such offers to me as are satisfactory, or to refuse any offers that may be made; but you can rely upon it, if you work up purchasers at the prices herein named before anybody else buys the land, that your party will get it and that you will make your commission.

(Signed) "F. W. DUNTON, C."

The other letter is as follows:

"CORBIN BANKING CO., N. Y., Oct. 16, 1880.

"Broadstreet & Day. Gents:—Answering yours of the 12th, we say, sales of the lands described can be made on the terms—one-fourth to one-third cash, balance in equal annual payments; the last maturing at a date not to exceed five years from the time of sale.

(Signed) "F. W. DUNTON."

The list which was transmitted with the first letter included the land in question, and the price put upon it was $3.00 per acre. The contract was entered into on the 20th of October, 1880, and the price agreed to be paid for the land was $3.00 per acre, and one-fourth of the price was to be paid in cash, and the remainder in three equal annual payments. Twenty dol-

lars was paid at the time the contract was made, and the remainder of the cash payment was to be made when the deed should be received from defendant; and notes were to be given for the deferred payments, and a mortgage executed on the land to secure them at the same time. When defendant was informed of the contract, he refused to perform it, and he now denies in his answer that Broadstreet & Day had any authority from him to make the contract, or that he is in any manner bound by it.

The first question which we are required to determine is, whether the letters set out above were written with defendant's knowledge or by his direction. We are satisfied by the evidence that they were so written. Defendant was president of an institution in New York, known as the Corbin Banking Company, and had his office in the office of the bank. Dunton, who wrote the letters, was cashier of the bank. Defendant owned a large amount of land in O'Brien county, and the evidence shows that, when letters were written to him personally concerning these lands by parties in the county, the letters were quite as frequently signed by Dunton, or the Corbin Banking Company, as by defendant himself. Parties from Iowa, who called on him at his office in New York with reference to lands owned by him in this state, were referred by him to Dunton, and were informed by him that Dunton had charge of his Iowa land business. After the contract was entered into, there was a correspondence between Broadstreet & Day and defendant with reference to the matter, and he did not claim in any of his letters that the letters were written without his authority, but, on the contrary, in a letter written by him on the 3d of December, he expressly refers to the letter of October 7 as his letter; and, in a letter written with reference to the matter to another party, he makes the same reference.

The ground upon which he first refused to execute the contract was that he had withdrawn the land from market before he was notified of the sale. It was next claimed that

this tract of land had been included in the list by a mistake of Dunton's; and finally it was claimed that the letters did not authorize Broadstreet & Day to do more than submit the proposition of the person wishing to purchase to him, and that he had reserved the right to accept or reject any offer that might be made.

Defendant's testimony was taken by deposition and read on the trial, and he denies positively that he ever authorized Broadstreet & Day or Dunton to sell the land. But, in view of the conceded facts in the case, we think this must be regarded rather as a denial that the letters conferred any authority on Broadstreet & Day to make the sale, than of Dunton's authority to write them. We are well satisfied by the evidence that in writing these letters Dunton acted for defendant, and that he had authority from him to write them.

II. The next question in the case is, whether Broadstreet & Day were empowered by the letters to make the contract. While there is one expression in the letter of Octo-

<div style="margin-left:2em">2. ——: construction of letters granting authority: rule of construction.</div>

ber 7th which, if considered alone, would seem to indicate an intention by defendant to reserve the right to reject or accept any offer which might be made for any portion of the land, we think, when the letters are considered together, that they confer on the agent the power to make the contract. The defendant transmitted to them the list, and the prices at which he would sell the land, with the first letter, and in that letter he tells them that, if they can effect any sales, he will be glad of it, although he reserves the right to sell through other parties, if satisfactory offers are made through them. But he assures them that, if they find purchasers at the prices named in the list before the land is sold to other parties, their customers shall have it. In the second letter he tells them that "sales of the lands described can be made on the terms—one-fourth to one-third cash," etc. The fair construction of all this language is, that it empowers the agents to contract for the sale of any of the land at the price and on the terms named, subject to the right reserved by de-

fendant to sell through other parties, if he receives satisfactory offers through them before the agents have found purchasers. And this construction has been put upon it by the agents, who have contracted with plaintiff for the sale of the land, in the honest belief that the power to make the contract was conferred on them by the letters.

It may be that the language is capable of the construction claimed for it by defendant, viz., that it only empowered the agents to submit the offer of plaintiff to him, and that he reserved the right to accept or reject the offer; but it is certainly open to the construction put upon it by the other parties, and the true rule of construction undoubtedly is that, when the language of a writing is ambiguous, it shall be taken most strongly against the contractor, and especially is this true when a construction of which it is fairly susceptible has been placed upon it, and third parties have been induced to act in the belief that that construction is the correct one. *Jackson v. Blodgett*, 16 Johns., 172; *Melvin v. Proprietors*, *etc.*, 5 Metc., 15; Broom's Legal Maxims, 571.

III. It is claimed that plaintiff is in default in this, that he has neither paid the balance of the first payment, nor made

3. SPECIFIC performance: conveyance of land : rule as to tender.

nor tendered his notes for the other payments; and that, therefore, he is not entitled to a decree for specific performance of the contract.

The evidence shows, however, that he has at all times been ready to perform, and that he has not performed the contract for the reason that defendant has continually denied that it is binding on him. This is an answer to the claim. Defendant has constantly evinced a determination not to recognize or perform the contract. He has resisted plaintiff's claim at every step; and all that can be required of plaintiff under the circumstances is, that he be ready at all times to perform his part of the contract.

To require him to tender the money or the notes, or to bring them into court for defendant's use, so long as he de-

clared his purpose not to accept them, would be to require him to do an idle thing, and this the law never does.

The judgment of the circuit court dismissing plaintiff's petition is reversed, and the cause will be remanded, with directions to enter a judgment requiring the defendant, upon the payment by plaintiff of the balance of the purchase-money, with interest at eight percent from October 20, 1880, within such time as the court shall direct, to execute to him a conveyance of the premises. Or, if plaintiff so elects, such judgment will be entered here.

REVERSED.