## MATTES v. ENGEL *et al*.

1. An agent employed to sell a mine, having found a customer with whom the owner made a contract of sale, is entitled to his commissions, in the absence of agreement to the contrary, though the contract was not specifically enforceable, and was canceled by the parties thereto.

2. One is not precluded from insisting on his commissions for selling a mine because, being made superintendent by the purchaser, he procures a modification of the contract of sale, extending time of payment

3. Allowing plaintiff in action for commissions for selling a mine, the contract for which sale was cancelled by the parties thereto, to go into details with reference to betterments which defendant by cross-examination, showed had, after the sale, been put on the property, is harmless.

(Opinion filed February 12, 1902.)

Appeal form circuit court, Pennington county. HON. LEVI McGEE, Judge.

Action by John G. Mattes against August Engel and another. Judgment for plaintiff. Defendants appeal. Affirmed.

*Schrader & Lewis* and *Ivan W. Goonder*, for appellants.

Both the pleadings and the evidence show a contract for a certain sum of money absolutely. The verdict in such a case must be for the whole amount or nothing. The jury cannot in such a case take half of plaintiff's theory and half of defendant's and make a

decision.  Hammer v. Merrick, 21 Pac. 783; Metz v. Campbell Co., 32 N. Y. S. 155; Cannon v. Smith, 66 N. W. 999; Walter A. Wood Co. v. Hancock, 23 S. W. 384; Ins. Co. v. Stout, 33 N. E. 623; Ilingsworth v. Slosson, 19 Ill. App. 612; Bacon v. Cott, 45 Ill. 47; Ford v. McVey, 55 Ill. 119.

Under a contract not to be paid the $5,000 commissions, until the whole $60,000, the purchase price, was fully paid, the plaintiff was not entitled to recover unless the sale was prevented by the fraudulent arbitrary or capricious conduct of defendants.  Baird v. Gleckler, 11 S. D. 233; Cremer v. Miller, 57 N. W. 308; Flower v. Davidson, 46 N. W. 308; Gorham v. Hermann, 27 Pac. 280; Montgomery v. Knickerbocker, 50 N. Y. S. 128; Hale v. Kimler, 85 Fed. 161; Schwardge v. Yearly, 31 Md. 270; Hadgkins v. Mead, 8 N. Y. S. 854; Little v. Rees, 4 Minn. 277; Lumley v. Healy, 44 L. R. A. 661; Stewart v. Fowler, 37 Kas. 677.

In this case the amendment to the contract of sale, prepared by plaintiff and adopted at his urgent solicitation, which changed its terms to a conditional option was the cause of preventing the sale and the final abandonment of the contract.  Where the failure to consummate a sale is due to the consent or fault of the broker he cannot recover.  Sawyer v. Bowman, 59 N. W. 27; Flower v. Davidson, 44 Minn, 46; Gibson v. Gray, 43 S. W. 922; Ganthier v. West, 45 Minn. 192; Yoder v. White, 75 Mo. App. 155; Seymour v. St. Luke, 28 Ill. App. 119; Hinds v. Henry, 36 N. J. L. 328; Walker v. Tirrell, 101 Mass. 257; Darrington v. Powell, 52 Neb. 440; Cremer v. Miller, 56 Minn. 52; Hyams v. Miller, 71 Ga. 608; Feldy v. Butcher, 99 Iowa, 414.

An instruction that does not respond to the pleadings or evidence is erroneous.  Enc. Plea. and Prac. 162; 11 Am. Enc. Law 147; Haggerty v. Strong, 10 S. D. 591; Gilmore v. Swisher, 52 Pac. 426;

O'Rourke v. Lindley R. R. Co., 44 S. W. 253; Blaves v. Morrow, 69 Mo. App. 382; Denver R. R. Co v. Spencer, 52 Pac. 211; Robberman v. Callaway, 6 Ill. App. 154; Morrow v. St. Paul Co. 67 N. W. 1002; Galveston Co. v. Herring, 36 S. W. 129; Holt v. Pearson, 41 Pac. 560.

It is error to charge on any issue not made by the pleadings even though evidence is given. Coos Bay Co. v. Siglin, 38 Pac. 192; Enc. Plea. and Prac. 163; Savannah R. R. Co. v. Tedman, 22 So. 658; Williams v. So. Pac., 42 Pac. 974; Galveston R. R. Co. v. Seligman, 23 S. W. 298; Holt v. Pearson, 41 Pac. 560.

*Charles W. Brown,* for respondent.

A real estate agent or broker, when duly employed to make a sale of property, is entitled to his commission when he has procured and reported to his principal a party ready, able and willing to purchase upon the owner's terms. Scott v. Slark, 3 S. D. 486; McLaughlin v. Wheeler, 1 S. D. 497; Baird v. Gleckner, 11 S. D. 233.

Where a binding contract has been made, the agent cannot be deprived of his commission by the refusal of the purchaser to perform the contract, or by the owner's election to release him rather than to incur the expense of litigation. Ward v. Cobb, 148 Mass. 518; Willis v. Smith, 77 Wis. 81; Brockenbridge v. Clayridge, 43 L. R. A. 600.

If the verdict is erroneous because for $2,500 only, this is an error in favor of defendants and harmless to them of which they cannot complain. Rudolph v. Hewitt, 11 S. D. 646; Thompson v. Schuster, 4 Dak. 163; Fischer v. Holmes, 123 Ind. 525; Boyce v. Railway Company, 72 N. W. 780; Sherman v. Davenport, 75 N. W. 187; Frum v. Keeney, 80 N. W. 507; Deere v. Wolf, 41 N. W. 588; Hamilton v. Thoen, 66 N. W. 166; Hanover Fire Ins. Co. v. Stoddard, 73 N. W. 291; Baum Iron Co. v. Berg, 66 N. W. 8; Sherburne v. Rodman, 8 N. W. 414; Bilgrien v. Dowe, 64 N. W. 1025.

FULLER, J.  To enforce compliance with the terms of an alleged oral agreement between plaintiff and the defendants, by the terms of which the latter agreed to pay the former a commission of $5,000 for procuring a purchaser of certain mining · property at $60,000, in deferred payments, this action was instituted, and prosecuted to a judgment for $2,500 in favor of plaintiff, from which the defendants appeal.

While insisting that respondent was not entitled to the stipulated commission until all the purchase price had been received, appellants concede that respondent was the procuring cause of the following contract, duly executed on the 14th day of January, 1898: "It is hereby mutually agreed by and between August Engel and F. G. Sierth, parties of the first part, and John Barth, party of the second part, that the parties of the first part convey, sell, and transfer an undivided whole interest in and to the following mining properties situated about one mile northwest of the town of Keystone, Pennington county, S. D., to-wit, the Bismarck and Hidden Treasure gold mining lodes, the titles to which are guarantied by the said parties of the first part against everything, to the said party of the second part, for the sum of sixty thousand ($60,000) dollars, to be paid in the following manner:   Five hundred dollars having already been paid, the receipt of which is hereby acknowledged; five hundred dollars on · the date of this indenture, the receipt of which is also acknowledged; and five hundred dollars· each and every month for the next following six consecutive months; and, after that time, one thousand dollars each and every month for the next consecutive four months; and, after the expiration of that time, five thousand dollars at the expiration of every three months until ten payments of five thousand dollars each have been made; and another and final payment to be made three months after that time of two thousand

dollars; making a total of sixty thousand dollars paid by said John Barth to the said parties of the first part—whereupon the parties of the first part shall furnish good and sufficient deed and title to the said party of the second part of the above-mentioned Bismark and Hidden Treasure gold mining lodes. Should, however, the party of the second part not fulfill his part of the agreement, the payments that have been made shall be forfeited to the parties of the first part." A portion of respondent's testimony introduced under the complaint is as follows: "Am acquainted with the defendants, Sierth and Engel. Have known them for five or six years. Am acquainted with John Barth. He resides in Milwaukee. Have known him about ten years. Prior to January 14, 1898, I did certainly have a contract or conversation with the defendants with reference to the Bismark and Hidden Treasure lodes, owned by them. The Hidden Treasure and Bismark lodes are situated about a mile north of Keystone, a little to the west. The conversation had with the defendants on or before January 14, 1898, was, they had two mining claims, the Bismark and Hidden Treasure, that they had been operating; and they told me, if I could find them a person to take their property, they would give me five thousand dollars. That was in the summer and fall of 1897 that we talked about these things there at Keystone. They said they would sell the property for sixty thousand dollars. Mr. Sierth told me that they had an offer of forty thousand dollars, even cash, for that mining ground, and that Mr. Engel was not satisfied, and the sale fell through, and therefore for me to talk with Mr. Engel, and make arrangements with him; and any arrangements made with him would be satisfactory to Mr. Sierth; and I talked with Mr. Engel several times, and he went with me to take some samples of the mine, to find out whether it was a paying proposition; and I

said if it proved to be anything like he said it would, I would get them a purchaser; and they said they would give me, if I got them a purchaser, or a person to take their mine, they would give me five thousand dollars, and the purchase price to be sixty thousand dollars. That was on or before January 14, 1898. Soon after I went to Milwaukee and had a talk with Mr. Barth, and I thought I impressed him quite favorably; and I came back, and we had some correspondence between us, and I went back again and saw him, and he finally agreed he would come back here. Made three trips to Milwaukee for the purpose of enlisting Mr. Barth as a purchaser. After talks with Mr. Barth, he did come out, and I brought him to Sierth and Engel, and introduced him to them, and they made a contract between them." While the foregoing is corroborated by certain facts and circumstances disclosed by the record, both of the appellants and another witness testify to the effect that no part of the commission of $5,000 was to be paid until the entire purchase price, of $60,000, had been received, according to the terms of the written contract.

Consonant with the prevailing doctrine, it is settled in this state that, when an agent employed to negotiate a sale of real estate has procured a purchaser who enters into a valid contract of sale with the owner, he is entitled to his commission, in the absence of an express agreement to the contrary, although the purchase, through no fault of the agent, is never consummated. The rule is applicable, even though the contract for a sale entered into or ratified by the owner of the property is not specifically enforceable. McLaughlin v. Wheeler, 1 S. D. 497, 47 N. W. 816; Scott v. Clark, 3 S. D. 486, 54 N. W. 538; Baird v. Gleckler, 11 S. D. 233, 76 N. W. 931. Unless respondent, by his conduct since the execution of the foregoing contract, has lost his right to insist upon immediate

payment of the entire commission, the finding of the jury in his favor for $2,500 is, at least to that extent, sustained by the evidence; and the fact that the verdict was not rendered for the full amount claimed is a matter of which appellants have no right to complain. Thompson v. Schuster, 4 Dak. 163, 28 N. W. 858; Rudolph v. Hewitt, 11 S. D. 646, 80 N. W. 133; Deere v. Wolf (Iowa), 41 N. W. 588; Fischer v. Holmes, 123 Ind. 525, 24 N. E. 377.

It appears from the evidence that, immediately after the execution of the contract of sale, Mr. Barth employed respondent to superintend his mining operations, and went into actual possession of the property. A little more than three months later, Barth, who was a non-resident of, and absent from, the state, directed respondent, as his agent, to procure the following modification of such instrument, signed by Barth and both appellants in the presence of respondent, who wrote the instrument, and, as a mere witness to the transaction, signed the same: "Whereas, the ore chute of the open cut has not yet been found in the Bismark mine, we, the undersigned owners of this mine, offer this amendment to the original agreement with Mr. Barth: Mr. Barth to continue to do the work on the property until such ore is found as, in his opinion, shall be satisfactory. Then he may make a mill run on the same for two weeks, and, if satisfactory, to resume payments as in the original agreement. That is, three more consecutive payments of $500.00 each monthly, then $1,000.00 monthly for four months, then $5,-000.00 every three months until fully paid as in the original agreement. Under circumstances in no way material to the questions of law to be considered, and without the slightest participation on the part of respondent, the contract of sale was, in consideration of a buyer's option, canceled on the 20th day of February, 1900, by the mutual agreement of all parties thereto, including Mr. Barth, and

a mining corporation organized by himself, and which appears to nave become his successor in interest, although he thereafter contributed to operating expenses, and paid some of the money received by appellants. Three thousand dollars had been paid by Barth on his contract prior to its cancellation, and, according to respondent's testimony, $14,850 is the aggregate amount that appellants have received from Barth and his successors on account of the transaction of which he claims to be the procuring cause. It appears from the evidence that, during the existence of the original contract, Barth was solvent and financially able to make the payments therein provided for, and that his object in procuring the modification was to make the property instrumental in paying for itself. The jury having found from the evidence that appellants agreed to pay the $5,000 commission as soon as respondent brought the parties together and a binding contract was executed, its subsequent modification or cancellation on account of Barth's inability to perform would constitute no defense to this action, unless respondent is responsible for such inability, and that has not been shown. Ward v. Cobb, 148 Mass. 518, 20 N. E. 174, 12 Am. St. Rep. 587; Willes v. Smith, 77 Wis. 81, 45 N. W. 666; Gilder v. Davis, 137 N. Y. 504, 33 N. E. 599, 20 L. R. A. 398. In one of the notes to Brackenridge v. Claridge (Tex. Sup.), 43 L. R. A., at page 600 (s. c. 44 S. W. 819), the author collates numerous authorities in support of the following most cogent rule: "The prevailing doctrine upon the right of a real estate broker to commissions where the principal refuses to enforce the contract against the purchaser, and release him therefrom, would seem to be that where the broker, by his efforts, has brought the parties together, and procured a person ready and willing to take the premises as they had intended to do, and the meeting of the parties results in the execution of a con-

tract under. seal, he has performed all he is called upon to do, and it is no part of his duty to see that the terms of the contract are complied with ; and therefore the subsequent inability of the party, and the rescission of the contract, by the mutual consent of the parties, in consequence of such inability, cannot be charged against the broker in the absence of an express agreement that he shall have no compensation unless the contract between the parties is fully performed."

Having on his cross-examination placed the value of improvements made in and about the property after the execution of the original contract at $70,000, respondent was permitted, over the objection of appellants' counsel, to go into details with reference to such betterments, but we are unable to see how this testimony was in the slightest degree prejudicial. As the commission was neither contingent upon payment of the full purchase price, nor the development of the property, the question of improvements, which seems to have been brought out by cross-examination, was wholly immaterial ; but in view.of the harmless character of this testimony, and the circumstances of its production, the action of the trial court with reference thereto does not necessitate a reversal. All objections urged against the instructions of the court, as given, have received most careful consideration, and we find no error in any part of the charge.

Respondent's complaint was ingeniously drawn in a manner rendering admissible his testimony with reference to what appears to be a supplemental or compromise agreement to pay the commission of $5,000 by installments on the receipt of certain sums from Barth or his successor; and, all evidence bearing on the proposition having gone in without objection, it was entirely proper to submit the same to the jury, together with the other facts and circumstances in the case.

Finding every reason urged for a reversal untenable, the judgment appealed from is affirmed.