## SCOTT et al. v. CLARK.

A real-estate agent or broker, when duly employed to make a sale of property, is entitled to his commission when he has procured and reported to his principal a party ready, able, and willing to purchase upon the owner's terms, although the owner himself really consummates and completes the sale.

(Syllabus by the Court. Opinion filed Feb. 8, 1893.)

Appeal from circuit court, Pennington county. Hon. JOHN W. NOWLIN, Judge.

Action by Samuel Scott and Josiah R. Reasor, copartners as Scott & Reasor, against Amelia B. Clark, administratrix of the estate of John R. Clark, deceased, made defendant by order of court, to recover for services rendered in selling the real estate of deceased. From a judgment for plaintiff defendant appeals. Affirmed.

The facts are fully stated in the opinion.

*Wm. T. Coad,* for appellant.

A broker differs from a factor in this, that he has no possession of the goods he sells for his principal, and, consequently, no lien on them, neither can he sell in his own name. Storey, Ag. §

34; Ruttenberg v. Main, 47 Cal. 213; Fisher v. Brown, 104 Mass. 259. To be entitled to his commissions a broker must be actually employed by the principal. 2 Am. & Eng. Ency. Law, 588; Harper v. Goodall, 62 How. Pr. 288. When several brokers are employed the one consummating a sale is entitled to his commissions. Dryer v. Ranch, 42 How. Pr. 22; Vreeland v. Vetterlein, 33 N. J. L. 249.

*Wood & Buell*, for respondents.

Where there is any evidence tending to support a material issue the case must go to the jury. Hayne, New Trial, § 117; Mercier v. Mercier, 43 Ga. 323; Johnston v. Crawley, 22 Ga. 34; Denny v. Williams, 5 Allen, 1; Brooks v. Sommerville, 106 Mass. 271; Hays v. Bell, 16 Mo. 496; Chambers v. McGineson, 33 Mo. 202 Mathews v. St. Louis, 50 Mo. 149; Way v. Railroad, 35 Iowa, 585; Muldowney v. Id., 32 Iowa, 178; Lewis v. Pratt, 48 Vt. 358; Chandler v. Van Roeder, 24 How. 87; Charles v. Patch, 87 Mo. 450. The supreme court will not disturb the ruling of the lower court on a motion to nonsuit if the grounds for the motion be not properly stated. Killer v. Kimball, 10 Cal. 268; McGarrity v. Byington, 12 Cal. 429; Holverstot v. Bugby, 13 Cal. 43; Baker v. Joseph, 16 Cal. 180; Gardiner v. Schmaelzle, 47 Cal. 590.

When the broker has produced a purchaser ready and willing to buy on the terms given by the principal, the principal cannot release himself by a capricious refusal to close the sale, but is liable to the broker for commissions. Stewart v. Mathew, 32 Wis. 344; Delaplaine v. Furnly, 44 Wis. 31; O'Connor v. Scrueple, 57 Wis. 243; Middleton v. Findla, 25 Cal. 77; Buckingham v. Harris, 10 Colo. 438; Glenworth v. Shannon, 29 Cal. 393; Gonzoles v. Brood, 57 Cal. 224; Koch v. Emmerling, 22 How. 73.

BENNETT, P. J. John R. Clark, the original defendant, in his lifetime, and before the bringing of this suit, was a resident of the city of Lincoln, in the state of Nebraska, and was the owner in fee of certain lots situated in Rapid City, S. D. Some time during the early part of February, 1890, these lots were sold by said Clark to one Henry W. Tate for the sum of $25,000. The plaintiffs in the above-entitled action claim and allege that they were real-estate agents and brokers, located at Rapid City at the time,

and that the defendant placed this property in their hands for sale, and that it was through their instrumentality and influence that the sale was effected; that for their services in making the sale they are entitled to a commission of 5 per cent. on the amount, or the sum of $1,250. The answer of the defendant admits that the plaintiffs were partners, and doing business as real-estate agents in Rapid City, at the time of the sale, but specifically denies their employment by him to make the sale, or that they did in fact make it. The defendant further alleges that about the middle of January. 1890, the plaintiffs did ask what the defendant would take for the lots, to which he answered he would take the sum of $24,000,—one third cash, balance on 6 and 12 months, with interest at 8 per cent.,—if the sale was consummated on or before the 25th of January, 1890, and that he was ready and willing to carry out his part of the negotiation for the sale of said property, and so informed the plaintiffs, but they refused to comply with the conditions and terms of the sale. The issues thus raised were tried to a jury. A verdict and judgment were rendered for the plaintiffs, from which judgment an appeal has been taken.

The assignment of errors raises two questions for determination: First. Do the facts disclosed by the evidence show an employment of the plaintiffs by the defendant? Second. Was a sale of the property effected by them in accordance with the conditions and terms imposed by the defendant?

To the first proposition, the answer of the defendant virtually admits that there was an employment of the plaintiffs, which extended up to the 25th day of January, 1890, but that, as they failed to comply with the terms and conditions of such employment, their services were dispensed with. The examination of the abstract will therefore be confined to the question of the subsequent transactions of the parties, to ascertain if there is any evidence to support the finding of the jury. The abstract shows that the plaintiffs and defendant were not personally acquainted, and the negotiation in relation to the sale of these lots was principally carried on by letters and telegrams; so that there can be but little dispute as to the primary facts. From the letters and telegrams produced at the trial it appears that Clark, the de-

fendant, offered to sell his lots in Rapid City on the 20th of January for $24,000,—one third cash, balance in 6 and 12 months, with interest at 8 per cent.; this offer good only for five days. Scott & Reasor, the proposers, stating that it would be impossible to comply within the time specified, asked for an extension until the 31st day of January, or 1st of February. Clark, in reply, stated that he had had some correspondence in relation to the property with other parties, and advised Scott & Reasor to submit another proposition, if they so desired, when their customer returned. Up to this date (January 29th) there, then, was no binding offer, or acceptance of it, between either of the parties. On the 3d of February, Reasor, of the firm of Scott & Reasor, telegraphed Clark an offer of $25,000,—one third cash, one third 6 months, and one third 12 months,—but without any reservation as to time or manner of delivery of deed. Clark at once accepted the proposition, stating he would send deed to the First National Bank, but demanded a deposit made in bank, securing the sale. Reasor, on the 4th of February, telegraphed to have the deed sent to Henry W. Tate. Clark replied he had forwarded deed to H. E. Bailey, his agent, and stated that he (Bailey) had full authority to close the transaction. Reasor then replied that he closed the deal on the Monday previous, which was the 3d, and for the first time demanded his commission. Clark then ordered Bailey, his agent, to deliver the deed on terms of Reasor's proposition, if taken at once. This was a ratification of Reasor's or Scott & Reasor's acts, and an acknowledgment of their employment to sell the lots. Bailey, the agent of Clark, refused to deliver the deed unless the sum of $25,-000 net was paid for it, without allowing Scott & Reasor the amount of their commission out of it. February 10th, Reasor says his customer left without the deed, and says he could get $28,000 for the property, and wants Clark to hold until he gets his second letter. On the 11th, Clark replies: "My agent, Mr. Bailey, telegraphs me that he will be here to-morrow. If you want to make any offer, submit it by that time." On the same day that Reasor says his customer had gone without the deed, and that he could get $28,000 for the property, he telegraphed to Clark, saying: "As per directions received from you on the 3d inst., I have closed deal

as stated in telegram; entered into contract giving customer ten days to receive deed from you and examine abstract. Ten days will be up Thursday of this week, at which time money will be paid as per contract." He also sent a letter under the same date more fully explaining the transaction. On the 12th, Clark replied, saying: "I have made no such terms as you mention. I refer you to my agent, Mr. H. E. Bailey." The negotiations, and their binding effect, then stand upon the proposition of February 3d, which was that defendant would sell the lots for $25,000,—one third cash, one third in 6 months, and one third in 12 months, with 8 per cent. interest on deferred payments. According to the testimony of Mr. Reasor, Mr. Bailey, the acknowledged agent of Mr. Clark, admitted he had instructions from Clark to close the deal for $25,000,—one third cash, one third in 6 months, one third in 12 months,—and to pay plaintiffs 5 per cent. commission; but, when this information was imparted to the plaintiffs, Mr. Tate, the alleged purchaser, did not comply, but had a telegram sent to Clark, saying he wanted the property for $400 less than the proposed price. This was on the 10th of February. These facts show the connection of the plaintiffs with the negotiations for the purchase of this property. The lots were afterwards, in a few days, sold by the defendant to the same Henry W. Tate, for the alleged sum of $25,000. There is uncontradicted evidence that the plaintiffs were real-estate agents and brokers, and that it is worth 5 per cent. of the amount of the sale to sell such property, and that this is the customary price throughout the United States.

We think the rule is well settled that an agent or broker, when duly employed as such, is entitled to his commission when he has procured a party ready, able, and willing to purchase upon the owner's terms, although the agent has not made a binding contract of sale with such purchaser. McLaughlin v. Wheeler, (S. D.) 47 N. W. Rep. 816; Buckingham v. Harris, 10 Colo. 455; Doty v. Miller, 43 Barb. 529; Delaplaine v. Turnley, 44 Wis. 31; Moses v. Bierling, 31 N. Y. 462; Hart v. Hoffman, 44 How. Pr. 168. The reason of the rule is based upon the fact that the agent, being the procuring cause of the sale, is always entitled to his commission.

Zeimer v. Antisell, 75 Cal. 509, 17 Pac. Rep. 642. Although the owner himself really consummates and completes the sale with the purchaser originally procured by the agent, the agent, if duly employed, will be entitled to his commission. Ratts v. Shepherd, 37 Kan. 20, 14 Pac. Rep. 496; Nicholas v. Jones, 23 Neb. 813, 37 N. W. Rep. 679; Butler v. Kennard, 23 Neb. 357, 36 N. W. Rep. 579; Sussdorff v. Schmidt, 55 N. Y. 319; Lincoln v. McClatchie, 36 Conn. 136; Goffe v. Gibson, 18 Mo. App. 1; Shepherd v. Hedden, 29 N. J. Law, 334; Williams v. Leslie, 111 Ind. 70, 12 N. E. Rep. 102; Doonan v. Ives, 73 Ga. 295; Dolan v. Scanlan, 57 Cal. 261; Armstrong v. Wann, 29 Minn. 126, 12 N. W. Rep. 345; Carter v. Webster, 79 Ill. 435; Tyler v. Parr, 52 Mo. 249. There can, however, be no doubt from the evidence that the plaintiffs were the procuring cause of providing a purchaser for the property of the defendant, and that he (the defendant) did afterwards effect a sale to the purchaser, on the same terms he authorized the plaintiffs to make. The admission in the pleading of the employment, and the subsequently availing himself of the fruits of this procurement, we think, under the rule above stated, entitles the plaintiffs to their commission. The evidence also shows that the plaintiffs submitted the proposition of their customer to the defendant, and that it was accepted, and that he agreed to send the deed to First National Bank, and, when the customer came for it, he found the deed in the hands of other parties, who refused to deliver it except on different terms. The purchaser was then willing, able, and ready to comply with the terms originally made by the plaintiffs. This is abundantly shown by the fact that the transaction was in a day or two afterwards consummated, virtually on the same terms and conditions, by the defendant with the purchaser procured by the plaintiffs. These facts having been submitted to a jury, and found in favor of the plaintiffs, we are very reluctant to interfere with a judgment of the court below when it rests upon a finding of facts on controverted evidence. There being evidence to support the judgment, it will be affirmed.

All the judges concur.