## HUNTEMER V. ARENT.

1. Evidence in an action by a real estate broker for commissions considered, and held to show that the broker had procured a purchaser able, ready, and willing to purchase on terms acceptable to the owner, and that a failure to complete the sale was the owner's fault.

2. The fact that the terms of sale of realty, as stated to a broker, were modified by the owner's acceptance, in the broker's presence, of the purchaser's proposal as to the method of payment, would not relieve the owner from liability for commissions.

(Opinion filed Feb. 4, 1903.)

Appeal from circuit court, Moody county. Hon. JOSEPH W. JONES, Judge.

Action by Augustus Huntemer against Nicholas Arent. Judgment for plaintiff, and defendant appeals. Affirmed.

*Robertson & Dougherty,* for appellant.

Before an agent employed to procure or find a purchaser for real estate can recover an agreed compensation for his alleged services, he must show by competent evidence that he has found a purchaser for such real estate who is at the time ready, willing and able to purchase such real estate on all the terms and conditions imposed by the owner in his contract

16 S. D.—30

with such agent, and has brought such person to the owner. Howie v. Bratrud 14 S. D. 648; McLaughlin v. Wheeler, 1 S. D. 497; Scott v. Clark 3 S. D. 486; McGavock v. Woodlief, 20 How. 221.

One employing a broker to sell real estate, but himself negotiating a sale without the agency of the broker, is not liable to him for commission, see: McClave v. Paine, 49 N. Y. 561; Armstrong v. Wann, 12 N. W. 345; Dole v. Sherwood, 43 N. W. 569; Baars v. Ryland, 67 N. W. 1148; Darrow v. Harlow, 21 Wis. 306; Vol. 4 Am. & Eng. Ency. Law (2nd ed) 979. 31; Vol. 1 Warvelle on Vendors, page 242.

*G. R. Krause* and *George Rice.* for respondent.

Fuller, J. This action, by a real estate agent against the owner of 320 acres of land to recover a commission for procuring a purchaser thereof, resulted in a judgment in favor of the plaintiff for the full amount claimed, and the defendant appeals. Respondent states the contract, and alleges a breach thereof in the complaint as follows: "(1) That on or about the month of October, 1900, the defendant employed the plaintiff to find for and furnish to him a purchaser of and for the east half of section 10, township 105, range 50, being 320 acres of land in Moody county, South Dakota, of which the defendant was then the owner, at $27 per acre; $4,500 of the purchase price to be paid in cash, and balance to be settled by purchaser's note, at 6 per cent. annual interest, secured by mortgage on said lands; such payment to be made and note and security to be executed and delivered to the defendant upon his executing and delivering a warranty deed containing the usual covenants, and an abstract showing good title in him; and promised

and agreed to pay the plaintiff for so doing the sum of $320. (2) That the plaintiff thereupon entered upon said employment and on or about November 15, 1900, found for and produced to the defendant as such purchaser for said land one D. G. Leuning, who was then and there willing, ready, and able to purchase said premises from the defendant at his said price and upon his said terms, but defendant refused to complete said sale. (3) That the defendant has not paid the plaintiff for his said services, and now owes him therefor the sum of $320, with interest thereon from and after December 1, 1900." The issues raised by a general denial were tried to a jury, and the sufficiency of the evidence to sustain the verdict is the only point presented by the assignments of error.

Respondent, after stating that he was engaged in the real estate business at Dell Rapids, and was acquainted with appellant, testified, in substance, as follows: "I had a conversation with him about finding a purchaser for him for that land last fall, It was on his farm. It was about the 20th of October. It was about ten days previous to the time I afterwards saw him there with Mr. Leuning. I asked about his place, and told him he was getting it fixed up pretty good. I said: 'Do you want to sell this place?' He said: 'Yes.' I asked what he wanted for it. He said twenty-six dollars an acre. I then said: 'If I sell it for twenty-seven dollars, will you give me the extra dollar?' He said: 'Yes, sir.' Afterwards I took a Mr. Leuning out to the farm and introduced him to Mr. Arent. I drove up there, and he was working in the house. I gave the lines to the other man. I said: 'Mr. Arent, I have got a customer for your place.' You come out and 1 will introduce him, and you show him the place. So Mr. Arent came out and

I introduced them. After I introduced Mr. Leuning to Mr. Arent, he took Mr, Leuning into the house and showed him the house. After that they came out, and he showed him the barn. After that they came back to the buggy where I was. I had shown him the land before. Q. Did you hear the conversation between them with reference to any arrangement? A. That was made between us three then, right there. Mr. Leuning said he would give him $4,500 cash; he was to assume two mortgages—there were two little mortgages—he was to assume these, and give him a second mortgage for the balance. Mr. Arent was to furnish an abstract and deed showing clear title. Nothing was said at that time about giving up possession of the land if sold. Q. What else, if anything was said with reference to Mr. Leuning's coming back to close the deal, if he saw fit? A. Mr. Leuning, of course, only went from Dell Rapids to this place with me, and then Mr. Leuning said he would look around and stop with a friend a few miles from there, and in a day or two come back and let him know. I said: 'It is not necessary for me to come back. If he wants this farm he will come back and you can close the deal up, and then come down and we will fix up the papers.' Q. Did Mr. Arent make any objection to that arrangement? A. No, sir."

Mr. Leuning corroborates respondent in all that took place upon this occasion, and concerning his negotiations with appellant at the farm states: "I talked with him about the price and terms. He wanted $27 an acre and I asked him if he was satisfied with $4,500 cash. He said, 'Yes.' He said there were two mortgages, and he was to take a second mortgage. I was to assume the mortgages on the place, and give a second mort-

gage for the balance of the purchase price. He was to give me clear papers. He told me that payment and these terms would be satisfactory to him if I bought the land. Q. What did you tell him with reference to looking at other lands and returning? A. I told him I was going off a day or two to look around some, but expected to see him. Q. You told Mr. Arent you would return again and see him about the land? A. Yes. Nothing said at that time about his not being able to give possession if I bought it. Two days after that I went back. It was on the third day. Q. When you went back what did you tell him? A. Why, I would like it. Why, I told him I would like his place. He was there in the house. I told him I would like his place. Then he said he did not know. He had rented it. And I asked him if he could give possession the first of March. He said: 'I do not know about it. I have rented it, and I do not know for sure.' Q. What further, if anything, was said at that time between you and him? A. I do not know as there was much more said. I told him I wanted possession, and if I bought it I would have to have possession the first of March. Q. Were you ready at that time to take the place on the terms that he had made you at that price? A. Yes. Q. You had the money, or could get it, to make the cash payment, could you? A. I did not have it with me, but was able to pay it." Cross-examination: "Q. You say you did not have the money with you at that time? A. No, I would not carry it with me. Q. Was there anything said about paying the money? A. I told him that I could pay that, and he said it was all right."

It thus appears, from the evidence offered on behalf of respondent, that appellant assured Mr. Leuning upon his first visit that he could furnish a perfect title, and nothing was said

about the premises being subject to a lease. Immediately upon the discovery of such fact, and for the purpose of completing the purchase on the terms mentioned above, appellant, respondent, and Mr. Leuning mutually agreed, independently of the stipulated price, to contribute $100 each for the purpose of acquiring the interest of the tenants. It appears that the young men to whom the lease had been made were absent when these negotiations for the sale took place, but appellant assured respondent and the purchaser that it would be all right as far as he was concerned, and stated: "When the boys come back we will come down and close the deal up." After some delay, occasioned by the failure of appellant to perform, and upon respondent's final visit to the farm for the purpose of completing the transaction, he stated that his reason for not coming down to close up the deal was that he had "let the Colman State Bank have the premises at the same price." From the time Mr. Leuning offered to buy the farm on the terms proposed by appellant, and until the land was sold to the bank, the former held himself in readiness to perform, and apparently did all in his power to facilitate the transaction. It was stated in McLaughlin v. Wheeler, 1 S. D. 498, 47 N. W: 816, that " the test of the agent's right to commission for finding a purchaser is not whether his agreement with the purchaser is specifically enforcable, but whether he has found a purchaser able, ready, and willing to take the property on the terms prescribed by his principal." This universal rule, relative to the rights of an agent who has in good faith furnished such a purchaser according to his arrangement with the landowner, has prevailed in this court, although he consummates no binding contract with the purchaser and the owner himself completes the sale. Scott v. Clark, 3 S. D. 486, 54 N. W. 538.

While, according to the original statement, a sale for cash at $27 per acre was presumptively contemplated, appellant cannot escape liability to his agent for offering to accept a portion of the purchase price in cash and defer the payment of the balance. This offer was made to Leuning in the presence of respondent, and the legal status of the parties was not thereby changed. Welch v. Young 79 N. W. 59. In Reid v. Thompson 50 S. W. 248, it is held that "an agent to sell real estate cannot be deprived of his commission where a sale made by him was not consummated because a third party claimed a lease on the property." Though disputed in many material particulars, we cannot say that the testimony is not sufficient to justify the jury in finding that the agent produced an able, ready, and willing purchaser on terms acceptable to the owner, and that the failure to complete the sale is entirely chargeable to appellant.

A careful review of the record discloses no error, and the judgment apealed from is affirmed.