## EGGLAND v. SOUTH.

The amendment by Rev. Civ. Code 1903, § 1177, of Code 1877, § 859, and of Comp. Laws 1887, § 3483, defining an "accord" to be an agreement to accept in extinction of an obligation something different from "or less than" that to which the person agreeing to accept is entitled, by striking the quoted words, in effect restored the common-law rule that no agreement to accept less than the amount to which one is entitled, where the payment is to be made in money, is a defense to suit to recover the amount of the original claim, and hence an agreement to accept $80 in satisfaction of a $160 debt is no defense to an action for the larger sum, less credits.

A directed verdict is only proper when the evidence is practically undisputed or such that different minds could not draw therefrom different conclusions.

Evidence held to show that a real estate broker earned a stipulated commission by producing a purchaser to whom defendant sold.

A broker, to be entitled to a commission for procuring a purchaser, must find a purchaser able, ready, and willing to purchase on the terms prescribed in the contract between the principal and broker;

but, if the specified price is obtained, a change in the mode of payment will not defeat the broker's right to a commission.

(Opinion filed, Nov. 25, 1908.)

Appeal from Circuit Court, Lincoln County. Hon. JOSEPH W. JONES, Judge.

Action by O. T. Eggland against C. A. South. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Affirmed.

C. B. Kennedy, for appellant.    A. B. Carlson, for respondent.

CORSON, J. This action was instituted by the plaintiff, a real estate broker, to recover the balance of a commission alleged to be due him from the defendant for procuring a purchaser for a quarter section of land owned by him in Lincoln county. From a judgment on a directed verdict and motion denying a new trial, the defendant has appealed.

The plaintiff alleges in his complaint, in substance: That in the year 1906 the defendant contracted and agreed with him, in consideration that the plaintiff would find a buyer for a certain quarter section of land belonging to the defendant in Lincoln county, he would pay the plaintiff $160; that plaintiff thereafter did find a purchaser ready, willing, and able to buy said land at the agreed price per acre, and the defendant sold the said land to the said purchaser so found and produced by the plaintiff; that of the said $160 so agreed to be paid by the defendant he has paid to the plaintiff the sum of $60; and that there is due and unpaid the plaintiff the sum of $100. Wherefore the plaintiff demands judgment for the said sum. The defendant in his answer denies each and every allegation of the complaint. For a second and further defense, the defendant alleges that, after said alleged sale, the plaintiff and the defendant met, and the defendant claimed that the plaintiff did not find a customer in accordance with the terms of said agreement between the plaintiff and the defendant, and that the said contract was not therefore complied with, and it was then and there agreed by and between the said plaintiff and the defendant in order to settle their deal without litigation that the plaintiff would accept $80 in full payment of all claims against the defendant on account of said contract, and that in accordance with the

said agreement the defendant paid the plaintiff the sum of $59.25, and the defendant admits there is due the plaintiff $20.75 and consents that judgment be entered therefor.

It is disclosed by the evidence and conceded by counsel for the plaintiff that the agreement set out in the answer was in fact entered into by the plaintiff and the defendant; but the plaintiff contends that the agreement was not complied with on the part of the defendant, by the payment of the full sum of $80, and that the same was not therefore binding upon the plaintiff, and he was therefore entitled to a judgment for the full amount of his claim of $160, less the $60 paid by the defendant, under the law as laid down by this court in the case of Carpenter v. Railroad Co., 7 S. D. 584, 64 N. W. 1120, in which this court held: "To establish a plea of accord and satisfaction under the statute, it must not only appear that there was an agreement to accept, in full settlement of an obligation, something different from or less than that to which one of the parties thereto is entitled, but it must be shown that such agreement has been fully executed, and the obligation extinguished by the creditor's actual acceptance of the consideration specified in the agreement constituting an accord." It is, however, contended by counsel for the defendant that the agreement to pay the sum of $80, notwithstanding the whole amount had not been paid, constituted a good defense to the action, for the reason that the defendant denied that anything was due the plaintiff, as he had not complied with his contract, and that therefore this case is distinguishable from the case before cited. In the view we take of the case, however, it will not be necessary to discuss or determine the question, as the law of this state relating to accord and satisfaction was materially changed by an amendment made by the Legislature of 1903 to the section (859) as contained in our original (Revised) Code of 1877, and now constituting section 1177 of the Revised Civil Code of 1903 as amended, by eliminating therefrom the words "or less than" contained in the original section. The section as originally adopted in the Code of 1877 and retained in the Compiled Laws of 1887 (section 3483) reads as follows: "An accord is an agreement to accept in extinction of an obligation, something different from or less than that to which the per-

son agreeing to accept is entitled." This section of our Code as adopted in 1877 was taken from the Civil Code of California (section 1521) as amended by the Legislature of that state in 1874 (Laws 1873-74, p. 240, § 186). California originally adopted section 732 of the Civil Code proposed by the code commissioners for the state of New York, which reads as follows: "An accord is an agreement to accept, in extinction of an obligation, something to which the person agreeing to accept is not otherwise entitled." In 1874 the Legislature of California amended this section as copied into our Code in 1877. It will be observed that the amendment of the section in 1903 by eliminating therefrom the words "or less than" makes a very material change in the section, and in effect restores the old common-law rule that no agreement to accept less than the amount to which a party is entitled, where the payment is to be made in money, constitutes a defense to the action instituted to recover the amount of the plaintiff's original claim.

It will be observed, further, that in the case at bar the amount claimed to be due plaintiff and to be paid in money was $160, and the amount which the defendant claimed that plaintiff agreed to accept was $80 in money. This alleged defense, as we have seen, at common law would constitute no defense to an action for the amount claimed, for the reason, as stated by the code commissioners of New York: "An agreement to accept a barrel of flour in satisfaction of a debt of $1,000 is valid, and if the flour is delivered the debt is satisfied. * * * But an agreement to accept $999 in satisfaction of the debt is unavailing and the obligation to pay the other dollar is unimpaired." No change, however, seems to have been made in section 1180 as originally adopted in the Code of 1877, and there is now apparently a conflict between the section as amended and section 1180, which provides: "Part performance of an obligation, either before or after a breach thereof, when expressly accepted by the creditor in writing in satisfaction, or rendered in pursuance of an agreement in writing for that purpose, though without any new consideration, extinguishes the obligation." But as it is not claimed in the case at bar that the agreement to accept the $80 by plaintiff in settlement of his claim was in writing, it is not necessary to discuss this apparent conflict in the

two sections at this time. Under the section relating to accord as amended by the Revised Civil Code of 1903, the defense of accord and satisfaction constitutes no defense to this action, and hence a further discussion of the question presented by the learned coun· sel will be unnecessary.

This brings us to the consideration of the merits of the case. As will be noticed by an examination of the complaint, the plaintiff claims that he found a purchaser for the defendant's land able, ready, and willing to purchase the same upon the terms proposed by the defendant, and that the defendant sold and conveyed his land to such purchaser, and that he is therefore entitled to his full commission of $160, less the amount paid by the defendant. The defendant, on the other hand, contends that the plaintiff did not furnish a purchaser ready, able, and willing to purchase the prop· erty upon the terms proposed, and that, though he eventually sold the property to the purchaser introduced to him by the plaintiff, he made the sale upon entirely different terms and conditions from those upon which he agreed to pay the plaintiff his commission, and that the plaintiff is therefore not entitled to recover anything in this action other than the $20.75 which he admits is due the plaintiff, and for which he consents judgment may be entered in favor of the plaintiff, and that the evidence on the part of the defendant clearly shows that the plaintiff was not entitled to recover the commissions, or at least there was such a conflict in the evidence that the case should have been submitted to the jury, and that the court erred in directing a verdict. The court is only authorized to direct a verdict when the evidence is practically undisputed, or such that different minds might not draw therefrom different conclusions. To determine, therefore, whether or not the court erred in directing a verdict it will be necessary to examine the evidence.

The contract, as testified to by the plaintiff, is substantially as follows: "I had a conversation with Mr. South with regard to the sale of this land in October last. * * * He told me the price was $55 per acre. I says, 'How much commission is there provided I sell it for that?' and he says, 'One dollar an acre.' Afterwards I saw Williams, the man who purchased the land, We went up to

see South about selling the land. I told South he could not pay anything until the first of March. He said that was all right. We all three met at the farm. I told south that Williams wanted to put in four acres at Worthing as part payment of this land. He said that was all right. We were talking the matter over. I told him, 'Williams could make but a small cash payment in March,' and he said that was all right." The statements made by the plaintiff that "Williams could not pay anything until the first of March, that Williams wanted to put in four acres at Worthing as part payment of his land, that Williams could make but a small cash payment in March," to each of which he replied, "That was all right," were not denied by the defendant.

The defendant states the transaction substantially as follows: "I remember a conversation with the plaintiff with reference to the land described in the complaint. That was last spring, in April or May. He wanted to know if he could have that land for sale. I said, 'Yes.' He said he should have a cash purchaser here from Iowa. I says, 'You bring me a buyer that will pay a good substantial cash payment for it down, and he can make the rest of the payments as he pleases.' He says, 'What commission will you pay?' I says, 'If you will bring me a purchaser for one piece, for $55 per acre, with a good substantial cash payment, I will give you $1 per acre, and another piece of land at $55 per acre on the same condition.' That was all the agreement we had. The next conversation was, I think, after he brought what he supposed to be a purchaser. Made an appointment to meet me at the farm. We met the party there and talked over the matter. He also wanted to rent a farm near the farm he would buy. He did not consider he would buy a farm unless he could rent one near by. He consented to the terms of the sale, although he could not make a cash payment. He thought he would put in a small piece of land near Worthing. What concerned him most was renting a half section of land adjoining. It was very well fixed for raising stock, what he wanted it for, fenced and all improvements for stock raising. I made him several propositions, all looking to the sale of this quarter section, and we finally agreed upon terms on which he was willing to rent and on which he was willing to buy, and something

about terms of payment. The contract with reference to selling this quarter section and renting was all one deal. Mr. Eggland was present and could have heard the terms of the deal stated. There was a reduction on the renting. I rented to him cheap for the purpose of selling him this quarter. He would not buy that land unless he could rent that land. The lease and sale was all one deal. I made him several propositions. Some of them he did not want, and I still kept making him better ones, until he finally accepted. The conversation that took place between us at the post-office was after the deal had been closed. He spoke to me about it. I think he said something about his commission. I am very sure he did, and I said, 'You have not fulfilled your contract, and I cannot pay you so much commission as that.' He says, 'I will cut it in two, and will make it half, easy money.' There was nothing said when the commission should come due. I think there was something said about there being no cash payment, and he should not ask for payment until the cash was paid. Nothing said about it being paid at once. I said I did not think he had earned it and could not pay it." On cross-examination he was asked the following question: "Q. You remember the ride you had with him (Eggland) coming back from the farm? You did not say anything to him then about not having earned his commission? A. I do not think I did. I thought I would wait and see whether it was sold or not. Q. You said you sold to Williams? A. Yes. Q. And Eggland brought you and Williams together? A. Yes, sir."

Mr. Williams, called and sworn on the part of the defendant, testified: "We closed a deal out there and made a contract for a quarter section of land of Charlie South and rented a farm. I asked Mr. South if he would rent this half section of land if I would buy the quarter? He said, 'Yes,' and we then made our deal to take the four acres I had at Worthing at $100 per acre. The renting of the land out there and sale was all one deal. I was to give $55 per acre." On cross-examination, he testified: "I made no payment but giving the four acres of land." Plaintiff then moved for a direction of a verdict on the following grounds: That the evidence on the part of the plaintiff and the defendant shows conclusively that an obligation existed and does exist on the part

of the defendant to pay to the plaintiff $160 before the commencement of this action, and that no part thereof has been paid, except the sum of $60, which motion was sustained and a verdict directed.

It seems quite clear from the undisputed evidence that there was an agreement between the plaintiff and the defendant, that, if the plaintiff produced a purchaser who would buy the land at $55 per acre, he should be paid $1 per acre commission. While there seems to have been a condition that there should be a good substantial cash payment, the amount does not seem to have been specified, and that the defendant, when informed by the plaintiff that Williams, the purchaser, could not make a cash payment until March, but would convey to him four acres of land near Worthing at $100 per acre, the defendant was satisfied, and said, "That was all right." It is also clear from the undisputed evidence that the defendant did make a sale of the land to Williams, the purchaser brought to him by the plaintiff, upon the terms that were satisfactory to him, and that the price he required was obtained. Upon this evidence we are inclined to take the view that there was a substantial compliance with the conditions of the contract, and that he did produce a purchaser able, ready, and willing to purchase the property at the price specified in the contract; that the property was sold to Williams, and the deal closed by the defendant; and that the plaintiff had therefore earned his commission of $1 per acre, amounting to $160.

It seems that the plaintiff was present and aided the defendant in making the deal, and that the defendant was apparently satisfied, though he did on one or two occasions insist that the plaintiff had not earned and should not charge him full commission. In Huntemer v. Arent, 16 S. D. 465, 93 N. W. 653, this court held that "the fact that the terms of sale of realty, as stated to a broker, were modified by the owner's acceptance, in the broker's presence, of the purchaser's proposal as to the method of payment, would not relieve the owner from liability for commissions." While this court has adopted the rule established by the Supreme Court of Wisconsin in McArthur v. Saluson, 53 Wis. 41, 9 N. W. 784, and uniformly held that the test of the agent's right to commission for finding a purchaser is that he must find a purchaser able, ready

and willing to take the property on the terms prescribed by his principal, (McLaughlin v. Wheeler, 1 S. D. 498, 47 N. W. 816; Scott v. Clark, 3 S. D. 486, 54 N. W. 538; Ball v. Doland, 18 S. D. 558, 101 N. W. 719); yet if the price specified had been obtained, but there has been some change in the mode of payments, the broker is nevertheless entitled to his commission. But the broker, to be entitled to his commission, must find a purchaser ready, able, and willing to substantially comply with the terms of his contract. Welch v. Young (Iowa) 79 N. W. 59; Huntemer v. Arent, supra.

In our opinion therefore the court was right in directing a verdict in favor of the plaintiff. The judgment of the circuit court and order denying a new trial are affirmed.

HANEY, P. J. I concur in the foregoing decision in all respects except as to the suggestion of an apparent conflict between the sections of the Civil Code as amended in 1903; my view being that the amendment was required to remove an inconsistency existing prior to the adoption of the amendment.