## LUND v. BAPP.

One who has employed another to find a purchaser for his land cannot relieve himself from liability to pay the commission by refusal to perform the contract made by him with the purchaser produced.

A real estate agent, not a party to an agreement between his employer and the purchaser produced, that the latter should pay him his commission, was not bound to look to the purchaser therefor, but still retained his right thereto against his employer.

A broker who has produced a purchaser ready, able, and willing to pay the price agreed upon, and a binding contract having been entered into by his employer and such purchaser, is entitled to his commission.

(Opinion filed, May 24, 1910.)

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Action by W. G. Lund against M. H. Bapp. From a judg-

ment for plaintiff and an order denying a new trial, defendant appeals.   Affirmed.

*Robertson & Dougherty,* for appellant.   *Krause & Krause,* for respondent.

CORSON, J.   This is an appeal by the defendant from a judgment entered upon a directed verdict in favor of the plaintiff. The action was instituted by the appellee to recover of the defendant the sum of $150 alleged to have been earned by the plaintiff as commission on the sale or exchange of lands belonging to the defendant.   The material parts of the complaint, after alleging that the defendant was the owner of 80 acres of land in Minnehaha county, are as follows: "The defendant employed the plaintiff to find for and produce to him a customer for said land to whom he might either sell or trade it for other property, and promised and agreed to pay plaintiff for his services in so doing all such amount above $45 per acre as the plaintiff might succeed in obtaining therefor in case of a sale, and to pay him, in case he produced a customer with whom defendant would enter into a contract to trade, all such amount above $45 per acre as such customer should be willing to and agree to allow for said land in such trade or exchange against his property at a valuation mutually agreed upon between such customer and the defendant."   It is further alleged: "That the plaintiff thereupon found a customer for such trade for and produced to the defendant, one John Simons, whom the defendant thereupon accepted as a customer, and with whom he entered into a contract in writing for the exchange of his said land for a certain 160-acre tract of land belonging to said Simons.   And said Simons was willing, and did agree, to buy and take defendant's said land in said exchange at $47 per acre, and to convey to defendant his said 60-acre tract therefor at the price they had mutually agreed upon, and was ready and able to carry out the terms of the said exchange contract, but defendant refused to complete said trade; that the defendant has not paid the plaintiff for his said services, and now owes him therefor the sum of $160 the value thereof, with interest thereon from and after July 1, 1909."   There is a small balance

claimed under the second cause of action which is not in controversy in this action. The defendant in his answer set up a somewhat different agreement between him and the plaintiff, but, as no evidence was offered on the part of the defendant, his answer is not material in the consideration of this case.

The material parts of the agreement entered into between the defendant and Simons are as follows: "This agreement, made this 26th day of June, 1909, by and between Mahlon Bapp of Minnehaha county, South Dakota, party of the first part, and John Simons, of Moody county, South Dakota, party of the second part, witnesseth: That the party of the first part sells and agrees to convey to the second party, the following property, to-wit: The south ½ of the northeast ¼ of section 11, township 104, range 49, in Minnehaha county, South Dakota, valued at $3,750.00, and subject to a mortgage of $2,250.00 which second party hereby agrees to assume. In consideration whereof, the second party sells and agrees to convey to first party, the following property, to-wit: The southwest ¼ of section 30, township 131, range 94, in Adams county, North Dakota, valued at $1,700.00, and subject to a mortgage of $350.00 which first party agrees to assume; and second party agrees to pay $150.00 commission to Lund's Land Agency when transfer is completed."

It appears from the evidence that the defendant entered into the agreement with the plaintiff as alleged in the compliant, and that the contract was entered into by the defendant with the said John Simons after certain changes had been made therein by and with the consent of the defendant. It will be observed that by the contract set out in the complaint the plaintiff was to receive all sums in excess of $45 per acre that he might obtain, either in the sale or exchange of the property. The price, therefore, at $45 per acre, would be $3,600, but it will be observed that by the contract between the defendant and Simons the price fixed as the value of the defendant's land was $3,750, being $150 in excess of the $45 per acre, and that in said agreement said Simons contracted to pay the extra $150 to the plaintiff directly. There being a mortgage upon the premises of the defendant of

$2,250, his equity in the premises would be of the value of $1,500, and that the said Simons' land being unincumbered was of the value of $1,700, leaving a balance due from the defendant to Simons of $200 over and above the $150 which the defendant had agreed to pay the plaintiff.    Mr. Nisbet, who was in some way connected with the plaintiff in the brokerage business, testified on the trial that the defendant's circumstances were such that he could not raise the $350, $200 of which was to be paid to the said Simons and $150 to the plaintiff, and that it was therefore agreed between the defendant and said Simons, and as stipulated in the contract between the defendant and Simons, that the said Simons, before transferring his interest in the 160 acres, should secure a loan for the amount of $350 and out of that loan pay the plaintiff the $150 and the other $200 retain for his own use.    It will be observed that the plaintiff was not a party to this contract, and that it was arranged in this manner for the purpose of relieving the defendant Bapp from the necessity of raising any money directly to pay to Simons the $200 difference that would come to him, and to pay to the plaintiff the $150 that would be due the plaintiff as commissions.    It further appears from the evidence that Simons was ready, willing, and able to carry out the terms of the contract on his part, and that he had in fact secured the $350 on a mortgage in North Dakota as stipulated in the contract; that he had tendered a deed to the defendant, but that the defendant refused to accept the same, and declared he would not comply with the terms of the contract.

It is contended by the appellant that the plaintiff, having brought his action upon a special contract, was not entitled to recover any sum whatever as commissions, unless the defendant actually received a sum in excess of $45 per acre for his land.    It is true that plaintiff brings his action upon a special contract, but it will be noticed by the terms of the contract as alleged in the complaint that the defendant promised and agreed to pay plaintiff for his services in so doing all such amounts above $45 per acre as the plaintiff might succeed in obtaining therefor, in case of a sale and to pay him, in case he produced a customer with whom

defendant would enter into a contract to trade, such amount above $45 per acre as such customer should be willing to, and agree to, allow for said land in such trade or exchange against his property at a valuation mutually agreed upon between said customer and the defendant. It clearly appears by a fair construction of the contract made by defendant with John Simons that the value of the defendant's land was fixed at a trifle below $47 per acre; the amount fixed being $150 in excess of $45 per acre. The plaintiff had, therefore, found a customer ready, able, and willing to take the defendant's land at $3,750 turning into the trade his own 160 acres at the price of $1,700 agreed upon by the defendant. Clearly, therefore, the plaintiff had earned his commission, and the fact that the defendant thereafter refused to comply with the terms of his contract, and convey his land, as specified in the contract, to Simons, did not relieve him of his liability to pay plaintiff's commission, and the fact that the defendant did not by virtue of his own repudiation of the contract receive the $3,750 does not affect the plaintiff's right to recover. The arrangement made by the defendant with Simons by which the difference in the equities of the two parties was to be adjusted by Simons paying over directly to the plaintiff the $150 in excess of the $45 per acre does not, in our view of the case, affect the defendant's liability to the plaintiff for his commission. The plaintiff by the undisputed evidence has clearly complied with the terms of his contract. He had produced a customer with whom defendant did enter into a contract to trade, and that the price of his land, in excess of the $45 per acre, was the $150 claimed by the plaintiff. As will be noticed in the trade, the defendant would be required to make up the sum of $350, the value of Simons' equity over and above that of the defendant. As the defendant had promised to pay the plaintiff the sum which the customer would agree to pay in excess of $45 per acre, this sum became due the plaintiff from the defendant when such customer was produced and the agreement of sale made. The defendant was at perfect liberty by his agreement with Simons to provide that the commission of $150 should be paid directly by the customer to the plaintiff, but the plaintiff,

not being a party to this agreement, was not bound to look to the customer for the payment of that sum. He still retained his right to his commission as against the defendant, and, as before stated, the defendant, by refusing to comply with the terms of his contract with Simons and thereby repudiating his contract with Simons, could not relieve himself of his liability to the plaintiff.

The learned counsel for the defendant has cited a large number of authorities to the point that, where a party alleges a special contract, he must prove that contract as alleged, and that proof of an implied contract is not admissible. Undoubtedly the law is correctly stated by the learned counsel, but we fail to see its application to the case at bar as a contract had been made between the defendant and Simons entirely satisfactory to the defendant for the amount of $150 in excess of the $45 per acre, fixed as the net price for the defendant's land. It seems to be the general rule that where a broker has produced a customer ready, able, and willing to pay the price agreed upon, and a valid and binding contract has been entered into between the seller and such customer, the broker is entitled to his commission. Scott v. Clark, 3 S. D. 486, 54 N. W. 538; Ball v. Dolan, 18 S. D. 558, 101 N. W. 719. And see cases cited in the latter opinion.

The contention of the counsel for appellant seems to be that, because the broker had procured a customer who agreed with the defendant to pay so much of the consideration coming to the defendant contracted to be paid in excess of the $45 per acre direct to the plaintiff, therefore his liability to the plaintiff was canceled no matter what he in fact did to prevent the customer from making such payment. This contention is clearly untenable. The defendant, after having entered into the contract with Simons by which the price of his land was fixed at $3,750, $150 in excess of defendant's net price, became liable to the plaintiff for his commission. Simons had secured the $350 on mortgage in North Dakota, and tendered a deed of the property so incumbered to the defendant, and demanded a deed from the defendant, and had thereby shown his ability and readiness to comply with the terms of the contract on his part, and defendant's failure' to receive the

$3.750 for his property was not the fault of the plaintiff, but was the fault of the defendant. No evidence was offered on the part of the defendant, and at the close of plaintiff's testimony the defendant moved for the direction of a verdict in his favor, and thereupon the plaintiff moved for the direction of a verdict in his favor. The latter motion was granted, and we are of the opinion that the court was right in granting the plaintiff's motion. The evidence was uncontradicted, and under it the plaintiff was clearly entitled to recover his commission.

The judgment of the court below and order denying a new trial are affirmed.