HEIMBERGER, Respondent, v. RUDD, Appellant.

(138 N. W. 374.)

1. **Brokers—Right to Commission—Procuring Cause—Contract.**

A real estate broker, who procured a purchaser who entered into a binding contract upon substantially the terms stipulated in the employment contract, and was the procuring cause of sale, was entitled to commission, though he did not actually bring the parties together, and took no part in drawing the contract of sale.

2. **Brokers—Right to Commission—Change in Terms of Sale.**

A real estate broker's right to a commission on sale of property to a purchaser whom he had procured was not defeated by the fact that, without the knowledge or consent of the broker, the sale contract contained conditions slightly different from those stipulated for in the broker's contract.

3. **Broker—Right to Commission—Title of Property—Pleading.**

Where a binding sale contract had been made between owner and a purchaser procured by a broker, the broker's right to commission was not defeated by the fact that the legal title yet remained in the owner and that plaintiff alleged that defendant was "still the owner," the latter having merely failed to convey under the sale contract.

4. **Broker—Action for Commission—Oral Contract—Question for Jury.**

> A real estate broker's employment contract was oral; the evidence as to the contract was conflicting. **Held,** the question of its terms was for the jury; the rule that the court shall construe and determine meaning of a contract applying only to written contracts.

5. **Vendor and Purchaser—"Option" Contract—Mutuality.**

> A contract binding one party to sell realty upon certain terms, and binding the other party to purchase same upon such terms, was a "contract sale," and not an "option" to purchase.

(Opinion filed October 25, 1912.)

Appeal from Circuit Court, Davison County. Hon. FRANK B. SMITH, Judge.

Action by W. A. Heimberger against Ole Rudd, to recover a commission on sale of realty. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Affirmed.

*Preston & Wagner,* for Appellant.

This action was commenced before any title papers were to pass between Seigfreid and Rudd. The contract, "Exhibit 1," (folio 18) is an option only. Seigfried paid $500 down to bind the bargain, and the terms contained in this option contract have never been carried out. (See paragraph 2 of plaintiff's complaint. Folio 6.) Seigfried was not to have possession until November 1st, 1910, and then on condition that he carry out the terms and conditions of the contract. Rudd got $500 forfeit money, which as far as the evidence discloses, has been forfeited, and no sale has ever taken place, and Heimberger thinks he has earned $836.00. He proceeds upon the theory that Rudd actually sold the farm for $55 per acre, when he admits in his complaint that Rudd still owns the land.

"An agreement between the owner of land and another person whereby, in consideration of a sum paid to the owner, he gives such person an option to purchase the land at a stated price, within a certain time, is not such a sale of the land as will entitle a real estate broker employed to sell the land, and who introduces such person, to the owner, to his commission." Dwyer v. Raborn, 33 Pac. 350. (Wash.) ; Aigler v. Carpenter Place Land Co., 33 Pac. 593 (Kan.) ; Brown v. Keegan, 76 Pac. 1056. (Col.) ; Fox v. Denargo Land Co., 86 Pac. 344-346. (Col.) ; Lawrence v. Rhodes, 58 N. E. 910 (Ill.) ; Jordy v. Salmon, B. L. Co., 46 So.

572; Parmley v. Farrer, 48 N. E. 693 (Ill.); Lawrence v. Pederson, 74 Pac. 1011, (Wash.); Walker on Real Estate Agency, Section 85.

Judgment should be directed for the defendant under the pleadings, the facts, and the law. We respectfully call attention to Pinch v. Anthony, 10 Allen 470; Dickerman v. N. Y. Etc., R. Co., 44 Atl. 228. (Conn.); Willoughby v. Atkinson, 44 Atl. 612 (Me.); Berford v. N. Y. Iron Mine, 8 N. Y. S. 193; Lewis v. Fox, 54 Pac. 823. (Cal.); Lennox v. Vandalia Coal Co., 59 S. W. 242. (Mo.); Barker v. Prizer, 48 N. E. 4. (Ind.); Meyer v. Berlands, 40 N. W. 513 (Minn.); Lawrence v. Pederson, 74 Pac. 1013.

"An agreement authorizing the sale of land for an amount to the owner, the agent making the sale to have as compensation what he could get above that amount, entitles him to no pay for making the sale, unless the owner receives the net amount stipulated." Burnett v. Potts, 86 N. E. 258 (Ill.).

In the case of Slayback v. Wetzel, 123 S. W. 982, the court undertook to charge the jury on the theory that the agent was entitled to his commission of $500 under the facts, and the Supreme Court said it was error. "A broker authorized to sell real estate for a specified sum for commission in excess of that sum is authorized to make a cash sale only." Rake v. Townsend, 102 N. W. 499. (Ia.).

Until respondent establishes that the purchaser, Seigfried, was able, ready and willing to buy the land on the terms which appellant authorized him to sell the land for, he cannot recover this contract price of $5 per acre. Rake v. Townsend, 102 N. W. 499 (Ia.); Hunt v. Tuttle, 110 N. W. 1026. (Ia.); Ames v. Lamont, 83 N. W. 780. (Wis.); Follinsbee v. Sawyer, 51 N. E. 994 (N. Y.); English v. William George Realty Co., 117 S. W. 996. (Tex.); McArthur v. Slauson, 9 N. W. 784 (Wis.) Bunks v. Pierce, 80 Pac. 1036. (Col.); Ball v. Doland, 18 S. D. 558.

*T. J. Spangler,* for Respondent.

The closing paragraph of appellant's brief reads as follows: "Rudd still owns the land,—the proposed purchaser only paid Rudd Five Hundred Dollars ($500), which was forfeited so Rudd gets Five Hundred Dollars ($500), and the land agent gets Eight Hundred Thirty-six dollars ($836) if the judgment stands."

This assertion may be a catchy argument, but there are no

facts and no evidence upon which to base it, the trial Court's attention never was called to such a theory, and it never was heard of in the trial of this action until found in appellant's brief in this Court.

Charles M. Seigfried, the purchaser in this case testified as follows: "I bought the land of the defendant direct. The contract exhibit "1" was made by the First National Bank of Mitchell, and neither the plaintiff nor Stuck had any part in the making of it."

On page 18, folio 72 of appellant's abstract the defendant, Ole Rudd, testified in substance, that Seigfried came to his place about May 20th, 1910, and inquired about his farm; and that he told him he had had it listed with the plaintiff; and that about two days later Seigfried and his brother came back again; and that he and Charles M. Seigfried agreed upon terms, and went to the First National Bank of Mitchell, and had the contract made, which is Exhibit "1."

Said contract, Exhibit "1," is found at page five of appellants' abstract, and it is only necessary for the court to read the same to see that it is a full and complete contract of purchase and sale, binding upon both parties thereto. Gaines v. White, 2 S. D. 410; Dowdell v. Cornue and others, 9 S. D. 126 and case there cited.

But if a real estate broker is employed to sell real estate, and through his efforts a purchaser is found and produced or in any manner brought to the owner of the land through his efforts and the owner of the land is aware that such purchaser is his customer, and a sale is consummated the broker is entitled to his commissions. Grieb v. Koeffler, 106 N. W. 113; Theobald v. Hopkins, 101 N. W. 170; Oliver v. Katz, 111 N. W. 509.

The general principles which seem to be universally established by the Court is, that where an agreement is made between a broker and the owner of real estate for the procurement of a purchaser, by the broker that if the broker is the procuring cause in producing a purchaser, who purchases the real estate, the broker is entitled to his commissions. Bird v. Webster, 107 N. W. 23; Reed v. Haak, 110 N. W. 130; McLoughlin v. Wheeler, 1 S. D. 498; Huntimer v. Arent, 16 S. D. 465; Land Co. v. Bouthien (S. D.) 127 N. W. 546; Langford v. Issenhuth, (S. D.), 133 N. W. 889, Ad. S. 7; Scott v. Clark, 3 S. D. 486.

But we think upon a careful reading of the case of Waters v.

Dancey, 122 N. W. 430 (S. D.), it will be readily seen that it is in harmony with former decisions of this Court, and with the rule as laid down by the authorities generally.

In this class of cases, whether or not the broker has procured a purchaser ready, able and willing to purchase and whether or not he has so complied with the terms of his agreement as to be entitled to his commission is a question of fact for the jury. Ewing v. Lunn, 115 N. W. 527.

CORSON, J.  This is an action by the plaintiff to recover of the defendant a commission on the sale of a quarter section of land. The action was tried to a jury, and the verdict and judgment were in favor of the plaintiff, from which judgment and order denying a new trial the defendant has appealed.

It is alleged in the complaint, in substance, that the defendant is the owner of a quarter section of land, and that the plaintiff is a real estate broker; that on or about the 12th day of April, 1910, the plaintiff entered into an agreement wherein, and by the terms of which, the defendant listed said described premises with the plaintiff for sale at the agreed price of $50 per acre net to the defendant, and that the plaintiff was to have as compensation all that the same might be sold for over and above $50 per acre; that it was agreed that the price fixed should be $55 per acre, of which the defendant was to have $50 per acre and the plaintiff $5 per acre as commission; that under and by virtue of said agreement the plaintiff did produce a purchaser, C. M. Seigfried, who subsequently purchased the premises at $55 per acre, making a total of $8,800, of which the plaintiff claims to be entitled to $800, and for which he demanded judgment.

The defendant in his answer admitted that the plaintiff was a real estate broker, and that the defendant was the owner of the premises described, and denied the other allegations of the plaintiff's complaint.

It is disclosed by the undisputed evidence that the plaintiff, on or about April 12, 1910, called at the residence of the defendant and inquired if his farm was for sale; that the defendant answered that it was, and that he wanted $50 per acre for the same; that he listed the property with the plaintiff and gave him at the same time a description of the buildings and other improvements on the

property, and it was agreed that the defendant should have $50 per acre net and the crop for 1910, and that plaintiff should have all over that sum that could be obtained for the property, and that the defendant should make the asking price $55 per acre to protect the plaintiff in his commission; that the plaintiff thereupon proceeded to find a purchaser, and finally found one Seigfried, who was looking for a farm, pointed out to him the location on the map, gave him a description of the improvements, character of the land, etc.; that on further conversations with Seigfried in regard to the property the plaintiff arranged to go down with him to see the defendant and the property; that he informed Rudd that the parties he had in view, and, to whom he expected to sell the land, were Seigfried and his son, who lived near Presho, S. D.; that a few days later Seigfried and his son went to the farm of the defendant, and on the 24th of May, 1910, a contract was entered into between the defendant and Seigfried by which Seigfried agreed to take the property at $55 per acre; that the plaintiff demanded his $5 per acre commission, as agreed, which the defendant refused to pay.

[1] While it is true that the plaintiff did not bring Seigfried and the defendant together, it was quite clear from the evidence that the plaintiff by his efforts caused Sigfried and his son to go to the defendant's place, where the contract for the sale was consummated, and that the plaintiff in fact found a purchaser ready, able, and willing to make a purchase of the property, and who entered into a binding contract with the defendant to purchase the same substantially upon the terms agreed upon between plaintiff and defendant. We are of the opinion therefore, that the jury were fully warranted, under the evidence, in the finding that plaintiff was entitled to his commission of $5 per acre, as agreed to by the defendant.

It is contended by the appellant that, as the plaintiff did not actually bring the purchaser and the defendant together, and took no part in the preparation and drawing up of the contract between Seigfried and the defendant, which was, in fact, drawn up by some party in a bank at Mitchell, he was not entitled to his commission. But this contention is clearly too restricted a view of the rights of a broker to his commission in this class of cases. It seems to be a general rule that, where an agreement is made be-

tween a broker and the owner of real estate for the securing of a purchaser by a broker, if the broker is the procuring cause in producing a purchaser, who purchases the real estate, the broker is entitled to his commission.

In Langford v. Issenhuth, 28 S. D. 451, 134 N. W. 889; this court held, as appears by the headnote: "A broker is a procu ing cause of sale if he is the original discoverer of the purchaser, and has started negotiations by which a sale is finally consummated." And this court, in it sopinion, quotes with approval the following from the case of Smith v. McGovern, 65 N. Y. 574, defining the words "procuring cause": "It means the original discovery of a purchaser by the plaintiff, and the starting of a negotiation by the plaintiff, together with the final closing by or in behalf of the defendant with the purchaser through the efforts of the plaintiff."

In Minder & Jorgenson Land Co. v. Brustuen, 26 S. D. 38, 127 N. W. 546, this court held, as appears by the headnote: "A real estate agent, who produces a purchaser with whom his principal enters into a contract, is entitled to his commission, though, without fault of his principal, the transaction is not consummated."

In Grieb v. Koeffler, 127 Wis. 314, 106 N. W. 113, it was held by the learned Supreme Court of Wisconsin, as appears by the headnote: "A real estate broker is entitled to his commissions for finding a purchaser if, through his efforts, a purchaser is found within the time limited, or, in the absence of a limitation, within a reasonable time; and it is not necessary that he should bring the purchaser to the owner."

In Reade v. Haak, 147 Mich. 42, 110 N. W. 130, the Supreme Court of Michigan held, as appears by the headnote: "Where brokers were to receive commissions for procuring a purchaser at a price satisfactory to the principal, they were bound, as a condition of their right to demand commissions, to bring the buyer and seller to an agreement, but it was not necessary that they should conclude the sale in person; it being sufficient if their efforts were the procuring cause of the sale." See Huntemer v. Arent, 16 S. D. 465, 93 N. W. 653; Scott v. Clark, 3 S. D. 486; 54 N. W. 538.

It is clear from the evidence in the case at bar that the plaintiff found the purchaser for the defendant's property, resulting in the contract of sale of the property by the defendant to the

purchaser so procured by the plaintiff; that he was the original discoverer of the purchaser, Seigfried, and started the negotiations resulting in the sale of the property to him.

[2]   It is further contended by the appellant that in the alleged sale of the property by the defendant so Seigfriend there was a change made in the terms of the sale from that originally proposed by the defendant's agreeing to give the purchaser one-third of the corn crop for the years 1910; but this was a change in the terms that the defendant had a right to make, and did not affect his liability to the plaintiff for the commission agreed upon. Huntemer v. Arent, supra.

[3]   It is further contended by the appellant that it is alleged in the complaint that the defendant, at the time the action was instituted (the 10th of August, 1910), was the owner of the property; and therefore, there being no sale of the property, the plaintiff was not entitled to recover his commissions in this action. While it is true it is alleged in the complaint that "the defendant, Ole Rudd, was and still is the owner," and that this allegation in the complaint was strictly true at the time, as the defendant had not conveyed the property to Seigfried, the purchaser, yet it affirmatively appears from the complaint and evidence in the case that the defendant had entered into a binding contract to sell the propery to Seigfriend upon terms and conditions substantially as specified in said cotnract; and hence the fact that the legal title to the propery still remained in the defendant did not prevent the plaintiff from recovering his commission.   Plaintiff's right to his commission was not in any manner affected by the delay contracted for by the defendant in the execution of his deed of conveyance and the transfer of the possession of the property to the purchaser, Seigfried.   By the terms of the contract, introduced in evidence, between the defendant and Seigfried, it is stipulated that certain payments should be made on the 1st of September, 1910, and mortgage and notes executed by Seigfried and his wife for the balance, and that possession should be transferred to them by the defendant on November 1st, and that the defendant would retain all the crop, except one-third of the corn crop.   When the plaintiff had procured the purchaser, he had complied with the terms of his contract with the defendant, and had properly left the defendant and the proposed purchaser to make such terms in con-

cluding the contract as the defendant might deem proper; and so long as the defendant secured $55 an acre for his land from the purchaser procured by the plaintiff, the plaintiff had earned his commission, and was entitled to recover the same.

[4] It is further contended by the appellant that by the terms of the agreement between the defendant and the plaintiff, when the plaintiff was employed to procure a purchaser for the farm, it was contemplated that the sale should be for cash, and that the time had expired which the plaintiff was to have in which to find a purchaser. But the plaintiff testified that no time was agreed upon in which he was to make the sale, and that the only condition as to payment was that the defendant should get as much money as possible on the sale and a mortgage for the balance. It is true there was some conflict in the evidence as to the time the plaintiff should have in which to find a purchaser; but, as the contract was oral, the question as to what the terms of the contract really were was for the jury to determine. Where the contract is oral, the questions as to its terms are left to the determination of the jury. It is only where the contract is in writing that the court is authorized to construe the same and determine the meaning of the contract. The jury, having found a verdict, therefore, in favor of the plaintiff, necessarily found that the contract was as testified to by the plaintiff; and the finding is conclusive upon this court. We must presume, as the charge of the court is not in the record, that the court correctly instructed the jury as to the law applicable to the case.

The further contention of the appellant that the change made in the contract with Seigfried, that he was to have one-third of the corn crop, had the effect of relieving the defendant from any liability to the plaintiff under the contract made by him with the plaintiff is clearly untenable, as such a change in the contract by the defendant did not affect the right of the plaintiff to recover in the action, as this stipulation was made in the contract between the defendant and Seigfried under the rights remaining in an owner, and, so far as the record discloses was made without the knowledge or consent of the plaintiff. The contract entered into by the defendant with Seigfried, the purchaser who had been produced by the plaintiff, and substantially upon the terms agreed to between the defendant and the plaintiff, clearly entitled the plaintiff to his

commission; and the fact that the defendant made a slight change in the terms of the contract between him and Seigfried would not, in our opinion, deprive the plaintiff of the right to his commission. If the seller of property could, by a slight change in the terms of a contract of sale between himself and the purchaser, deprive a broker of his commission, it would afford such seller of property an easy means of defrauding the brokers employed by them to find purchasers out of the commissions earned by them. In our view of the law, when a broker has produced a purchaser ready, able and willing to purchase the property upon substantially the terms agreed upon between the seller and the broker, and a contract is entered into between the seller and the purchaser substantially in accordance with the terms of the contract between the seller and the broker, the broker is entitled to his commission, notwithstanding the fact that the seller may, in his contract with the purchaser, make some slight change in the conditions stipulated in the contract between the seller and the broker.

[5] It is further contended by the appellant that the contract entered into between the defendant and Seigfried was an option contract, and that therefore there was no contract of sale entered into binding upon the purchaser; but this contention is clearly untenable, as the contract was a mutal contract, and not an option contract, as the purchaser, as well as the defendant, was bound by the terms of the same. The material parts of the contract are as follows: "* * * Said party of the first part has this day sold * * * (describing the property) for the sum of $8,800.00 upon the following terms and conditions, to-wit: $500.00 cash, the receipt of which is hereby acknowledged. $2,000.00 to be paid in cash Sept. 1st, 1910. For the balance of $6,300.00 the said second party will give a note for like amount, signed by himself and wife. * * * It is agreed that the said first party shall retain all of the crop with the exception of a one-third of the corn crop. * * * It is mutually agreed that the possession of the above-described land shall be given the said second party November 1st, 1910, provided the terms of this contract have been complied with. The said second party agrees to purchase * * * (the property) for the sum of $8,800.00, and to pay for the same at the time and in the manner described above. * * *."

It will thus be seen that Seigfriend binds himself "to purchase

* * * for the sum of $8,800.00, and to pay for the same at the time and in the manner described above." In 21 A. & E. Enc. of Law an option is thus defined: "An option is a right acquired by contract to accept or reject a present offer within a limited or reasonable time in the future." A note on the same page gives the following definition of an option, as quoted from the case of Black v. Maddox, 104 Ga. 157, 30 S. E. 723; "The obligation by which one binds himself to sell, and leaves it discretionary with the other party to buy, is what is termed in law an option, which is simply a contract by which the owner of property agrees with another person that he shall have the right to buy the property at a fixed price within a certain time"—citing Ide v. Leiser, 10 Mont. 5, 24 Pac. 695, 24 Am. St. Rep. 17.

It will be seen therefore, that the contract in the case at bar was clearly a mutual contract, enforceable by both parties, and not an option contract.

Finding no error in the record, the judgment of the court below and order denying a new trial are affirmed.